## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM M. WATTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 3:22-161 |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | Magistrate Judge Dodge |
| | ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION</u>

Plaintiff William M. Watts brings this pro se civil rights action against the United States of America and various employees working at the Federal Correctional Institution at Loretto, Pennsylvania ("FCI Loretto"), raising claims pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 ("FTCA") and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*").[1] Named as Defendants are the United States, Lt. Pattison, Lt. Hendrix, Counselor Gardner, Officer Griffith, Counselor Troy Mack, Dr. Batchelder, Assistant Warden Dixon, Officer Lego and two "John Doe" correctional officers.

Pending before the Court is a motion to dismiss filed by Defendants (ECF No. 31). For the reasons that follow, it will be granted.[2]

### I.   Procedural History

On September 20, 2022, Plaintiff submitted a civil rights complaint to this district without paying the filing fee or submitting a motion for leave to proceed in forma pauperis ("IFP"). After he submitted the motion to proceed IFP, the case was reopened and his Complaint was docketed

---

[1] Plaintiff is currently incarcerated at FCI Milan in Milan, Michigan.

[2] The parties have fully consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 40, 41.)

on November 2, 2022 (ECF No. 6).

The Complaint asserts claims of slander, slander per se, libel, libel per se, zone of danger rule, negligence, failure to provide reasonable safety, breach of duty, failure to intervene, deliberate indifference and/or increased risk to any and/or all of these other violations. (Compl. at 7.) Defendants construe Plaintiff's FTCA claims as negligence, slander, libel and defamation and his *Bivens* claims as due process, retaliation and deliberate indifference/failure to protect.

On February 23, 2024, Defendants filed a motion which they identify as a motion to dismiss or, in the alternative, for summary judgment (ECF No. 31). By order dated February 27, 2024, the Court determined that their motion would be addressed solely as a motion to dismiss and not as a motion for summary judgment (ECF No. 34).[3] After Plaintiff filed a response (ECF No. 43), Defendants requested and were granted permission to file a reply brief, which they filed (ECF No. 46). Thus, the motion has been fully briefed and is ready for resolution.

## II.   Facts Asserted in Complaint

In his Complaint, Plaintiff alleges that, in retaliation for asserting his due process rights, he was placed in a cell at FCI Loretto with an inmate who sexually assaulted him. He claims that because he had been falsely accused of having a homemade weapon in his cell, he was sent to the Special Housing Unit ("SHU"). Even after another inmate in the cell accepted responsibility for having made the weapon, however, he was improperly kept in the SHU in retaliation for demanding "any and all due process rights" between September 16 and September 29, 2020. Because Officer Griffith's incident report failed to acknowledge that Inmate Wheless took responsibility for the weapon, Plaintiff alleges that the incident report represents libel, slander and

---

[3] As a result, the documents Defendants submitted along with their motion have not been considered in connection with revolving the motion to dismiss and Plaintiff was directed not to submit any additional documents in this context.

defamation against him. When Plaintiff told Assistant Warden Dixon that he was being treated unjustly, Dixon told him to "file on it."

While in the SHU, Plaintiff woke on several occasions to find his SHU cellmate sucking his fingers, sucking/licking his toes and touching/fondling/handling his genitals. He reported these incidents to Counselor Mack during a hearing. Mack replied "Well, let me look into it. I'll see what I can do" but Mack never followed up. Plaintiff also reported the incidents to psychologist Dr. Batchelder, who asked him if the incidents were "unwanted." Because Dr. Batchelder said he could not guarantee Plaintiff's safety, he decided to wait until he got out of the SHU to pursue the matter.

Plaintiff also claims that he did not have access to his legal paperwork or his "shower shoes," and therefore could not shower while lodged in the SHU.

Plaintiff alleges that all of the individual defendants are either responsible for the placement and removal of SHU inmates at FCI Loretto or for ensuring inmate safety and reporting any sexual activity at the prison.

### III.   Standards of Review

Under Federal Rule of Civil Procedure 12(b)(1), dismissal "is appropriate when the District Court lacks jurisdiction over the subject matter of the case. Fed. R. Civ. P. 12(b)(1). The Third Circuit Court of Appeals has held that, because the FTCA is a partial abrogation of the federal government's sovereign immunity because it allows for suits for torts against the United States, a motion to dismiss based on the discretionary function exception should be evaluated under Rule 12(b)(1). *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). The United States contends that Plaintiff bears the burden of rebutting its attack and establishing that subject matter jurisdiction exists. However, the Court of Appeals has held that "The United States has the burden of proving

the applicability of the discretionary function exception." *Cestonaro v. United States*, 211 F.3d 749, 756 n.5 (3d Cir. 2000) (citation omitted).[4]

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

---

[4] The United States also asserts that it is raising a factual attack to Plaintiff's Complaint, but it has not cited evidence outside of the Complaint with respect to this issue.

IV.   **Analysis**

A.  <u>FTCA Claims</u>

Defendants move to dismiss Plaintiff's claims of libel, slander, defamation and negligence under the FTCA because the United States, which is the only proper defendant, is immune from suit for the claims Plaintiff has alleged.

The FTCA provides that: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances. . ." 28 U.S.C. § 2674. "The Government is the only proper defendant in a case brought under the FTCA." *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008). As a result, Plaintiff cannot bring tort claims against any individual official, including an individual in his "official capacity," because "the real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).[5] Therefore, with respect to all FTCA claims, Defendants Lt. Pattison, Lt. Hendrix, Counselor Gardner, Officer Griffith, Counselor Troy Mack, Dr. Batchelder, Assistant Warden Dixon, Officer Lego and the two "John Doe" correctional officers must be dismissed.

The FTCA provides certain exceptions to liability on the part of the United States, including the following:

> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

\* \* \*

---

[5] In his response, Plaintiff acknowledges that the United States is the only proper defendant in an FTCA claim. (ECF No. 43 at 1-2.)

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. . . .

28 U.S.C. § 2680. Invoking both of these exceptions, the United States argues that all of Plaintiff's

claims should be dismissed.

As the Third Circuit has explained:

> As a sovereign, the United States is immune from suit unless it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941)). Its consent to be sued must be "unequivocally expressed," and the terms of such consent define the court's subject matter jurisdiction. *Id.* (quotations omitted). The FTCA operates as a limited waiver of the United States's sovereign immunity. *See Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003). "Because the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." *Livera v. First Nat'l State Bank of N.J.*, 879 F.2d 1186, 1194 (3d Cir. 1989). "[W]e should not take it upon ourselves to extend the waiver beyond that which Congress intended." *United States v. Kubrick*, 444 U.S. 111, 117-18, 100 S. Ct. 352, 62 L. Ed.2d 259 (1979).

*White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (footnote omitted). *See also*

*F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.")

Because libel, slander and defamation claims are expressly exempted from the limited

waiver of the sovereign immunity of the United States, *see Brumfield v. Sanders*, 232 F.3d 376,

382 (3d Cir. 2000), Plaintiff cannot bring claims against the United States for these torts.[6]

That leaves Plaintiff's negligence claim for further analysis. In connection with this claim,

the United States relies upon the discretionary function exemption in § 2680(a) as the basis for its

motion to dismiss this claim. To determine whether the discretionary function exception to the

waiver of immunity applies, a court must assess (1) whether the act involves an "element of

---

[6] Plaintiff concedes that the United States is immune from suit for claims of libel and slander However, he "respectfully requests that this Honorable Court please explain how the violations on behalf of individual Federal employees acts, is recognized to the American people as the United States being 'above the law.'" (ECF No. 43 at 2.)

judgment or choice," rather than a course of action prescribed by a federal statute, regulation, or policy; and (2) even if the challenged conduct involves an element of judgment, "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Mitchell v. United States*, 225 F.3d 361, 363-64 (3d Cir. 2000) (quoting *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)).

Plaintiff was incarcerated in a federal correctional institution that is managed by the Bureau of Prisons ("BOP"). The BOP is required under federal law to:

> (1) have charge of the management and regulation of all Federal penal and correctional institutions;
>
> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
>
> (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.

18 U.S.C. § 4042(a).

The United States argues that, to the extent Plaintiff alleges that the government negligently housed him with a dangerous inmate and failed to protect him from that inmate, these alleged actions fall within the discretionary function exception because housing inmates is a matter of judgment or choice, which is based on considerations of public policy. *See Rhodes v. Chapman*, 452 U.S. 337, 350 n.14 (1981) ("a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators."); *Bell v. Wolfish*, 441 U.S. 520, 521 (1979) ("prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.")

The Third Circuit has held that BOP housing and cellmate assignments meet the standard

of the discretionary function test:

> At the first prong, housing and cellmate assignments unquestionably involve an "element of judgment or choice," *Gaubert*, 499 U.S. at 322, 111 S. Ct. 1267 (citation omitted), for while BOP officials must "provide suitable quarters" and "provide for the protection, instruction, and discipline of all" of its inmates, 18 U.S.C. § 4042(a)(2)-(3), neither that provision nor any other "federal statute, regulation or policy" can be said to "specifically prescribe[ ] a course of action" for such assignments that BOP officials must follow. *Mitchell*, 225 F.3d at 363 (citation omitted). And at the second prong, "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," *Rhodes v. Chapman*, 452 U.S. 337, 350, 101 S. Ct. 2392, 69 L.Ed.2d 59 (1981), and "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, the District Court correctly concluded that housing and cellmate assignments are "of the kind that the discretionary function exception was designed to shield." *Mitchell*, 225 F.3d at 363 (citation omitted).

*Rinaldi v. United States*, 904 F.3d 257, 273-74 (3d Cir. 2018). In *Rinaldi* , the plaintiff alleged that after he complained about being assaulted by a cellmate, prison officials negligently transferred him to another cell in which a second cellmate assaulted him. The court concluded that the actions of the prison officials fell within the discretionary function exception.

Plaintiff responds by referring to regulations issued under the Prison Rape Elimination Act ("PREA"), contending that the United States had a non-discretionary duty to protect him that it failed to follow. While Plaintiff generally refers to "Title 28 C.F.R. Part 115" (ECF No. 43 at 3), he does not cite a specific regulation. The United States suggests that the most likely regulation on which Plaintiff may be relying states that: "When an agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate." 28 C.F.R. § 115.62. It further notes that the comment to that section in the BOP's Program Statement 5324.12 provides that:

> In cases where the alleged perpetrator is another inmate, the Operations Lieutenant is notified immediately and immediately safeguards the inmate (which will vary

depending on the severity of the alleged sexually abusive behavior and could include monitoring the situation, changing housing assignments, changing work assignment, placing alleged victim and perpetrator in Special Housing, etc.). The Operations Lieutenant promptly refers all inmates reported or suspected of being the victim of sexually abusive behavior to Psychology Services for assessment of vulnerability and treatment needs. The Operations Lieutenant also notifies the Institution PREA Compliance Manager.

(ECF No. 46 Ex. 1.)[7] The United States argues that this regulation clearly contemplates discretionary decisions to be made by federal officials, not mandatory requirements.

According to the United States, various courts have held that neither the PREA nor its implementing regulations impose a mandatory duty on the BOP regarding how they resolve claims about how to house and monitor inmates involved in sexual misconduct allegations. *See Gladney v. United States*, 858 F. App'x 221, 223 (9th Cir. 2021) (noting that "both [34 U.S.C. § 30307(a) and 28 C.F.R. § 115.13(a)] explicitly grant the BOP discretion in how to reduce the sexual assault of people in its charge."); *Pinson v. United States*, 2022 WL 4093753, at *7 (D. Ariz. Aug. 23, 2022) ("28 C.F.R. § 115.67 only specifically mandates that the BOP 'establish a policy to protect all inmates and staff who report sexual abuse' for signs of possible retaliation"; "when and how to perform status checks, what may suggest possible retaliation, and what protective measures best address a particular risk or threat all involve 'an element of judgment or choice' on the part of prison staff and fall squarely within the discretionary function exception.").

The United States argues that the claim asserted by Plaintiff is readily distinguishable from cases in other jurisdictions in which courts concluded that certain other PREA regulations create mandatory duties. In *L. C. v. United States*, 83 F.4th 534, 549-50 (6th Cir. 2023), the Court of Appeals for the Sixth Circuit stated that: "Because BOP policy requires that its staff timely report and investigate any information pertaining to sexual assault or harassment by a BOP official, and,

---

[7] Available at: https://www.bop.gov/policy/progstat/5324_012.pdf at 39.

in any event, the decision to report and investigate is not susceptible to policy analysis, we hold that a properly alleged claim that the BOP acted negligently by failing timely to report and investigate information regarding sexual assault by a BOP official—as mandated by Program Statement 5324.12, §§ 115.61, 115.71—falls outside of the discretionary-function exception.") *See also Pinson v. United States*, 2022 WL 21797575, at *10 (D. Ariz. Sept. 30, 2022) ("Both 28 C.F.R. § 115.61 and BOP Program Statement 5324.12 contain non-discretionary language about what steps must be taken when a prison official receives a report of sexual harassment or sexual abuse."); *James v. LaCroix*, 2017 WL 2602598, at *4 (W.D. La. Apr. 17, 2017) (same), *report and recommendation adopted*, 2017 WL 2588570 (W.D. La. June 14, 2017).[8]

Notably, no court within the Third Circuit has held that these provisions create a mandatory duty that falls outside the discretionary function exception in the circumstances alleged by Plaintiff.

The United States asserts that Plaintiff's claims are not based on a failure to report, but rather, on his continued placement in the SHU, which, as outlined above, is a discretionary function. *See Donaldson v. United States*, 281 F. App'x 75, 77-78 (3d Cir. 2008) (inmate who alleged that prison official repeatedly ignored his reports of sexual harassment and threats of violence and failed to protect him from another inmate could not state a claim under the FTCA because "No federal statute, regulation, or policy required the BOP to take a particular course of action to ensure Donaldson's safety from attacks by other inmates" and because "the judgment involved in this case—i.e., how best to protect one inmate from the threat of attack by another—

---

[8] Section 115.61(a) states that: "The agency shall require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility." 28 C.F.R. § 115.61(a). Section 115.71 describes procedures for criminal and administrative agency investigations into allegations of sexual abuse and sexual harassment.

is of the kind that the discretionary function exception was designed to shield.")

As noted by the United States, according to Plaintiff's own allegations, he was offered the opportunity to pursue this issue but instead made the choice to return to his cell (Compl. at 8.) Plaintiff alleges that he reported these incidents to Counselor Mack during a hearing and Mack said that he would look into it but never mentioned it to Plaintiff again. Further, Plaintiff alleges that he reported the incidents to Dr. Batchelder, who asked him if the incidents of sexual contact from the other inmate were "unwanted," which would require Dr. Batchelder to report a claim of sexual abuse.[9] Plaintiff did not respond; rather, he asked Dr. Batchelder if he could guarantee his safety, to which the doctor replied that he could not guarantee his safety but could guarantee the process. They then spoke about when Plaintiff might be getting out of the SHU, and having thought about it, Plaintiff decided to wait until he got out of the SHU to pursue the matter.

Plaintiff's primary claim is that he was kept in the SHU even after another inmate had confessed to possessing the weapon. He does not argue that he should have been removed from a particular cell in the SHU because he reported incidents of being touched by another inmate—a claim that would be barred by the discretionary function exception because no statute or regulation requires the BOP to take this action. Rather, he contends that he should not have been put in the SHU in the first place after Inmate Wheless took responsibility for the weapon on the day it was found and/or that he should have been released prior to September 29, 2020. As explained above, the decision about how to place inmates in a prison is a discretionary one.

---

[9] Plaintiff asserts that "there is **no** consensual sexual activity allowed in the Bureau of Prisons, at **any** time, and staff knows this." (ECF No. 43 at 3.) However, he has not identified any statute or regulation that requires certain action by the BOP, and the use of the terms "sexual abuse" and "sexual harassment" clearly relate to prohibited activity that is non-consensual in nature.

Moreover, the procedures in place require that an inmate who reports or is suspected of being the victim of sexually abusive behavior is referred to Psychology Services for assessment of vulnerability and treatment needs. Plaintiff admits that he discussed this matter with Dr. Batchelder "of Psychology." At that point, the reporting requirement was fulfilled and Dr. Batchelder had the discretion to take action, if any, that he deemed necessary or appropriate. This falls squarely within the discretionary function exception. And notably, Plaintiff decided that he did not want any action to be taken until he was removed from the SHU.[10]

Therefore, because Plaintiff's negligence claim falls within the discretionary function exception, Defendants' motion to dismiss will be granted.

B.  Bivens Claims

In *Bivens*, the Supreme Court established a direct cause of action under the United States Constitution against federal officials for violating federal constitutional rights. *See Mack v. Yost*, 968 F.3d 311, 314 (3d Cir. 2020).[11] In *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017), however, the Supreme Court held that expansion of *Bivens* claims beyond the three specific contexts in which the Court had applied it is "disfavored." These specific contexts were Fourth Amendment, Fifth Amendment and Eighth Amendment claims. *See Carlson v. Green*, 446 U.S. 14, 19 (1980); *Davis v. Passman*, 442 U.S. 228, 245 (1979). More recently, the Supreme Court held that "unless a case is indistinguishable from *Bivens*, *Davis*, or *Carlson*, a damages remedy may be created by

---

[10] Plaintiff also alleges that he subsequently tried to report his cellmate's conduct but no one responded. However, given that he was no longer in the SHU and does not allege that he continued to be housed with the same inmate, there was no action that was necessary to protect his safety.

[11] The United States itself is immune from suit. Neither the Constitution nor 28 U.S.C. § 1331, which provides subject matter jurisdiction for federal question cases, including civil rights actions, contains a waiver of the federal government's immunity. *See Clinton County Comm'rs v. U.S. E.P.A.*, 116 F.3d 1018, 1021 (3d Cir. 1997). "Neither the United States nor its agencies have waived sovereign immunity for constitutional claims." *Mierzwa v. United States*, 282 F. App'x 973, 976-77 (3d Cir. 2008) (citing *United States v. Testan*, 424 U.S. 392, 400-02 (1976))

Congress, but not by the courts." *Fisher v. Hollingsworth*, 2024 WL 3820969, at \*5 (3d Cir. Aug. 15, 2024) (citing *Egbert v. Boule*, 596 U.S. 482, 492-93 (2022)).

As noted above, Plaintiff alleges that the individual defendants violated his due process rights by issuing an unfounded incident report and placing him in the SHU when they knew he was not responsible for the homemade weapon. Further, he claims, they retaliated against him for demanding "any and all due process rights" by placing him in a cell with a "high-risk" inmate and that they failed to protect him from sexual assault by this inmate. Defendants argue that none of these allegations state a *Bivens* claim.

The Supreme Court has explicitly held that "there is no *Bivens* action for First Amendment retaliation." *Egbert v. Boule*, 596 U.S. 482, 499 (2022). *See also Vanderklok v. United States*, 868 F.3d 189, 198, 209 (3d Cir. 2017) (after *Abbasi*, but prior to *Egbert*, the Third Circuit recognized that its prior decisions that assumed the validity of a *Bivens* claim in a First Amendment context were no longer valid and held that *Bivens* did not afford a remedy against airport security screeners who allegedly engaged in a retaliatory prosecution against a traveler who exercised First Amendment rights). Thus, Plaintiff cannot state a *Bivens* claim that is based on First Amendment retaliation.[12]

In *Egbert*, the Supreme Court stated that:

> To inform a court's analysis of a proposed *Bivens* claim, our cases have framed the inquiry as proceeding in two steps. First, we ask whether the case presents "a new *Bivens* context"—i.e., is it "meaningful[ly]" different from the three cases in which the Court has implied a damages action. Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." If there is even a single "reason to pause before applying *Bivens* in a new context," a court may not recognize a

---

[12] Plaintiff concedes that there is no *Bivens* claim for First Amendment retaliation but "only if this Court agrees." (ECF No. 43 at 5.) This Court is bound by the holding of the Supreme Court that no such claim may be maintained.

*Bivens* remedy.

While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy. For example, we have explained that a new context arises when there are "potential special factors that previous *Bivens* cases did not consider." And we have identified several examples of new contexts—e.g., a case that involves a "new category of defendants,"—largely because they represent situations in which a court is not undoubtedly better positioned than Congress to create a damages action. We have never offered an "exhaustive" accounting of such scenarios, however, because no court could forecast every factor that might "counse[l] hesitation." Even in a particular case, a court likely cannot predict the "systemwide" consequences of recognizing a cause of action under *Bivens*. That uncertainty alone is a special factor that forecloses relief.

Finally, our cases hold that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, "an alternative remedial structure." If there are alternative remedial structures in place, "that alone," like any special factor, is reason enough to "limit the power of the Judiciary to infer a new *Bivens* cause of action." Importantly, the relevant question is not whether a *Bivens* action would "disrup[t]" a remedial scheme, or whether the court "should provide for a wrong that would otherwise go unredressed." Nor does it matter that "existing remedies do not provide complete relief." Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies "should be augmented by the creation of a new judicial remedy."

596 U.S. at 492-93 (footnote and citations omitted).

Defendants argue that Plaintiff's due process claims do not fall into any of the three contexts in which the Supreme Court implied a *Bivens* remedy, and as such, they present a new context. In fact, they contend that the claims belong to a category of cases where a *Bivens* remedy is routinely *not* recognized. *See Straker v. Valencik*, 2021 WL 1134591, at *6 (M.D. Pa. Mar. 24, 2021) ("no *Bivens* remedy extends to Plaintiff's Fifth Amendment claims based on placement in administrative detention and his claim challenging his transfer to a more restrictive prison because prison officials have – and indeed must have – the authority to determine detention policies, to assess the endless variety of circumstances in which those policies may be implicated, and to decide when administrative detention is deserved and for how long.") (citation omitted).

In addition, as Defendants note, Congress has provided an administrative remedy for prisoners' grievances, an "alternative remedial structure" that precludes implying a *Bivens* remedy. *Egbert*, 596 U.S. at 497-98. *See* 28 C.F.R. §§ 542.10-.19. The Court of Appeals has "join[ed] our sister courts and hold that the BOP's Administrative Remedy Program precludes a *Bivens* remedy." *Fisher*, 2024 WL 3820969, at *7. *See Bulger v. Hurwitz*, 62 F.4th 127, 140 (4th Cir. 2023) (refusing to extend new *Bivens* remedy to case of infamous inmate murdered in his cell by other inmates, inter alia, because of the existence of an administrative remedy).

Thus, Plaintiff cannot sue the individual federal officers for his alleged due process violations.

Finally, with respect to the failure to intervene or protect claim, Defendants argue that it also presents a new context. The Court of Appeals for the Third Circuit recently addressed this issue and agreed that the Supreme Court's holding in *Egbert* abrogated its decisions in *Bistrian v. Levi,* 912 F.3d 79, 90-92 (3d Cir. 2018) and *Shorter v. United States*, 12 F.4th 366 (3d Cir. 2021), which held that prisoner-on-prisoner violence and failure to protect claims were not new contexts for *Bivens* claims because they were analogous to claims asserted in *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). *See Fisher v. Hollingsworth*, 2024 WL 3820969 (3d Cir. Aug. 15, 2024). Rather, the Court of Appeals held that: "there is no implied constitutional damages action against federal officials who fail to protect prisoners from the criminal acts of their fellow inmates." *Id.* at *5. The court noted that "the Supreme Court has never recognized *Farmer* as a *Bivens* action." *Id.* at *6 (quotation omitted). And "neither *Bivens*, *Davis*, nor *Carlson* involved an official's alleged failure to . . . protect an inmate from prisoner-on-prisoner violence." *Id.* The court held that several special factors foreclosed providing a remedy in this new context and, as noted above, the BOP's Administrative Remedy Program provided an "alternative remedial structure." *Id.* at *6-7.

Therefore, Plaintiff cannot state a *Bivens* claim for failure to intervene based on the Eighth Amendment. Moreover, as the PREA does not provide a private right of action. *Frederick v. Snyder Cnty. Prison*, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22, 2019) (citations omitted).

Because Plaintiff cannot state a claim under *Bivens*, Defendants' motion to dismiss will be granted.[13]

## V.   Conclusion

The Third Circuit has held that a plaintiff who submits a complaint subject to dismissal for failure to state a claim should receive leave to amend unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

In this case, it would be futile to allow any amendment of the claims to be dismissed because as discussed in this opinion, Plaintiff's FTCA claims of libel, slander, defamation and negligence are barred by specific exceptions in the statute and the only proper Defendant with respect to his negligence claim is the United States. Further, his *Bivens* claims do not fall within the narrow circumstances recognized for such claims, nor do they meet the standard for recognizing "new context" claims. No amendments could cure these deficiencies, so the dismissal of them will be with prejudice.

For these reasons, the motion to dismiss filed by Defendants (ECF No. 31) will be granted.

An appropriate order follows.

Dated: August 29, 2024          /s/ Patricia L. Dodge
                                PATRICIA L. DODGE
                                United States Magistrate Judge

---

[13] Defendants also argue that Plaintiff failed to properly exhaust his *Bivens* claims prior to bringing suit. Analysis of this argument would require the consideration of additional materials outside the pleadings which is neither appropriate in the context of a motion to dismiss, nor is it necessary.